[No. 27-40337-3.  Division Three.  October 21, 1969.]

THE STATE OF WASHINGTON, *Respondent,* v. LESLIE GENE STANDLEY, *Appellant.*

*Lowell D. Sperline,* for appellant (appointed counsel for appeal).

*E. R. Whitmore, Jr., Prosecuting Attorney,* and *David J. Whitmore, Deputy,* for respondent.

EVANS, C. J.—The defendant Leslie Gene Standley was charged by information with the crimes of second-degree burglary and first-degree forgery. The trial court sustained the defendant's challenge to the sufficiency of the evidence as to the burglary charge. A jury returned a verdict of guilty to the charge of first-degree forgery and defendant appeals.

The defendant's sole assignment of error is that the trial court erred in admitting evidence of a witness who identified the defendant as the individual who uttered the check in question, without first requiring the state to prove by clear and convincing evidence that the identification of the defendant was in fact an identification made without reference to a prior photographic identification.

On December 30, 1966 a check drawn on Trevi-Tile, Inc., signed "G. T. Dean" and payable to "Rulen B. Clark", dated

December 30, 1966 was cashed at the North End Safeway Store in Wenatchee, Washington. The check was thereafter returned by the bank on which it was drawn for the reason that the signature on the check was an unauthorized signature. It was not until several days later, on January 4, 1967, that employees of Trevi-Tile, Inc. discovered that their building had been entered through the roof and that a number of checks had been stolen. On that same day, January 4, 1967, the defendant was involved in a serious automobile accident in the Redmond, Washington area. Jerry Houser, a police sergeant, was called to the scene and found the defendant trapped inside a demolished 1958 Chrysler sedan. Nine checks were found within a few feet of the demolished vehicle. These checks, in all respects except as to the amount, appear identical to the check which had been cashed at Safeway on December 30, 1966. The defendant was in a semi-conscious condition when he arrived at the hospital. The admitting nurse, in attempting to obtain information as to the identity of the defendant, found on the person of the defendant a driver's license and a hunting license under the name of Rulen B. Clark, and a driver's license and a fishing license under the name of Leslie G. Standley.

These items came to the attention of the police department and a few days later the police showed John Simmons, the employee of Safeway's store who cashed the check in question, six photographs, one of which was a picture of the defendant. Mr. Simmons identified the picture of the defendant as being a picture of the person for whom he had cashed the check in question, whereupon the defendant was arrested on the charges of burglary and forgery.

Prior to trial, counsel for the defendant made a timely motion to suppress the testimony of John Simmons, relying upon *United States v. Wade*, 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926 (1967). The trial court, also relying upon *Wade*, denied the motion, ruling the state had established by clear and convincing evidence that the identification

made in court was not based upon the photographic identification of the defendant, but was based on the observations made by Simmons when the check was cashed.

At the time of this ruling it was recognized by the trial court and both counsel that the test laid down in *Wade* related to "lineup identification", but the trial court was of the opinion that the "clear and convincing evidence" test of *Wade* applied equally to a "photographic identification".

■ Since the trial of this case, however, the Supreme Court has considered the subject of photographic identification in *Simmons v. United States*, 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968). There the court stated, at 384:

> Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirements. Instead, we hold that each case must be considered on its own facts, and that *convictions based on eye-witness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.*

(Italics ours.)

This rule has been followed in two recent Washington cases: *State v. Gefeller*, 76 W.D.2d 609, 458 P.2d 17 (1969), and *State v. Kearney*, 75 W.D.2d 178, 449 P.2d 400 (1969).

In the present case the record discloses that the witness John Simmons had ample opportunity to observe the person who presented the check to him, endorsed it, wrote an address and telephone number on the reverse side, and

obtained $254.34. During his testimony at the time of trial the witness Simmons consistently maintained that his in-court identification of the defendant was based on the events occurring when the check was cashed and not upon any other event.

At the time of the photographic identification the witness was shown a group of six pictures of white male adults. The pictures were laid out in front of him in no particular order. There is nothing in the record to indicate that the photograph of the defendant was especially called to the attention of the witness, and he studied all six pictures before making his identification of the defendant. The witness had never seen any of the other persons in the other five photographs.

As stated in *State v. Gefeller, supra,* at 613,

> Whatever normal uncertainties may be claimed to have inhered in seeing the picture could well be disclosed by cross-examination. The state should not be deprived of this identification merely because the police had shown the two witnesses only a solitary picture. [Citing *State v. Kearney, supra.*]

This applies with greater force to the present case, where six pictures were shown to the witness.

We find nothing in the record to indicate that the pretrial photographic identification procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

Judgment is affirmed.

GREEN and MUNSON, JJ., concur.